UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

UNITED STATES OF AMERICA,
Plaintiff,

v.

RICKY JOHNSON,

Defendant.

No. 7:15-CR-05-DCR-HAI-1

RECOMMENDED DISPOSITION

*** *** *** ***

The matter is before the Court for a recommended disposition concerning whether Defendant Ricky Johnson is mentally competent to face further proceedings, to include trial, in this case. For the reasons discussed below, the Court **RECOMMENDS** that the District Judge find Defendant competent to proceed.

**I. Factual and Procedural Background**

On October 6, 2015, the Court conducted a competency hearing in this matter, per 18 U.S.C. §§ 4241 and 4247(d). D.E. 57. Magistrate Judge Atkins granted Defendant's Motion for Competency Evaluation (D.E. 24) following a motion hearing on June 12, 2015. D.E. 29. He ordered a custodial evaluation, and Defendant was ordered to report to the custody of the Attorney General. *Id.* Judge Atkins, upon the required findings, ordered that the psychiatric and/or psychological examination be conducted pursuant to 18 U.S.C. §§ 4241(b) and 4247(b)-(c). *Id.* Judge Atkins subsequently recused from the case, and the matter was reassigned to the undersigned. D.E. 39.

The evaluation occurred at the Federal Medical Center in Lexington, Kentucky. D.E. 47 at 2. A forensic report was prepared by Dr. Judith Betsy Campbell, a forensic psychologist. *Id*. at 8. Dr. Campbell conducted a series of clinical interviews and psychological testing with Defendant, and interviewed counsel for Defendant and the United States via telephone. *Id*. at 2-3. Dr. Campbell opined that Defendant is competent to stand trial. *Id*. at 8.

During the final hearing on October 6, 2015, the Court confirmed that all parties received and had sufficient opportunity to review the report. D.E. 57. In support of his position that he is not competent, Defendant presented testimony of four witnesses and offered copies of his medical records. *Id.* Dr. Campbell testified for the government. *Id.* At the conclusion of the hearing, the Court summarized its findings and indicated that they would be further detailed in this Recommended Disposition.

## II. Analytical Framework and Evidence Presented

Section 4241 codifies the competency principles of *Dusky v. United States*, 362 U.S. 402 (1960). Thus, to be competent, a defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as a factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960); *see also* 18 U.S.C. § 4241(a) (phrasing test as whether a defendant is "unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."); *United States v. Nichols*, 56 F.3d 403, 410 (2nd Cir. 1995) (applying the "two-prong" competency test from *Dusky*). Section 4247(d) governs the competency hearing, and assures certain trial-type rights. These include the right to confront and cross-examine witnesses, and the right to participate in the hearing. *See id.*; *see also* 18 U.S.C. § 4241(c) (referring to the hearing procedures outlined in section 4247(d)).

Ultimately, per section 4241(d) and based on the hearing, a defendant is not competent if, "after the hearing, the court finds by a preponderance of the evidence that the defendant" meets the incompetency definition of section 4241(a). 18 U.S.C. § 4241(d). This framework **suggests** that the party raising the issue of competency—here the defendant—bears the burden of proof, *see United States v. Rothman*, No. 08-20895-CR, 2010 WL 3259927, at *6 n.4 (S.D. Fla. Aug. 18, 2010) ("The present statute does not speak in terms of whether the government or defendant has the burden of proof; it only mandates that whoever is seeking to prove incompetence has the burden.") (citing *United States v. Izquierdo*, 448 F.3d 1269, 1276-77 (11th Cir. 2006)), although the cases are in disagreement as to the burden allocation. *Compare United States v. Chapple*, No. 94-5048, 1995 WL 6147 at *2 (6th Cir. Jan. 6, 1995) (table) (burden is on United States, though without statutory analysis) and *United States v. Sally*, 246 F. Supp. 2d 970, 976 (N.D. Ill. 2003) (burden is on the United States) *with United States v. Simmons*, 993 F. Supp. 168, 170 (W.D.N.Y. 1998) ("The burden to prove a lack of competence is on the defendant."). Although the United States Supreme Court has not directly addressed the burden issue under § 4241(d), the Court has suggested in dicta that the defendant bears the burden. *See Cooper v. Oklahoma*, 517 U.S. 348, 362 (1996) ("Congress has directed that the accused in a federal prosecution must prove incompetence by a preponderance of the evidence.").

The parties in this case disputed which side bore the burden, however neither party presented controlling authority on this point. Based on the statutory text, the Court ruled that the burden rests upon Defendant as the movant. Furthermore, the issue of proper burden allocation is only material "in a narrow class of cases where the evidence is in equipoise; that is, where the evidence that a defendant is competent is just as strong as the evidence that he is incompetent." *Medina v. California*, 505 U.S. 437, 449 (1992). As described below, that is not the case here.

**A. Testimony of Angela Damron[1]**

Angela Damron testified that she has been an outpatient therapist at Mountain Comprehensive Care in Prestonsburg, Kentucky since June 2014. *Hearing on Competency, October 6, 2015*, at 11:38-50.[2] She testified that Defendant had been her patient since spring of this year, following a referral from a local medical center. *Id.* at 12:08-33. She testified that, in total, she has had four sessions with Defendant since his referral. *Id.* at 12:35-48. She testified that, on September 9, 2015, she signed a petition for involuntary commitment of Defendant because he was having suicidal thoughts and anxiety, and was severely distressed. *Id*. at 13:56-14:56; *see also Defendant's Exhibit B.* She further testified that Defendant had also been treated at Mountain Comprehensive Care on an inpatient basis. *Id.* at 15:05-12.

She stated that Defendant has been diagnosed with major depression by Mountain Comprehensive Care, and in her opinion he has not demonstrated any improvement. *Id.* at 16:44-17:22. Moreover, she testified that Defendant told her that one of the sources of his anxiety and depression was his involvement in this criminal case. *Id.* at 18:12-24. Ms. Damron testified that, during the course of her training, she has not been trained as to the standard for competency to stand trial. *Id.* at 18:30-38. Finally, she stated that Defendant never demonstrated, in the course of her treatment of Defendant, a break from reality, and has always been able to understand and answer her questions. *Id.* at 18:54-19:18.

**B. Testimony of Cathy Gibson**

Cathy Gibson testified that she is a nurse practitioner at Hazard Appalachian Regional Healthcare (ARH) Psychiatric Center. *Id.* at 24:18-25:02. She testified that Defendant was a

[1] The Court only summarizes herein the evidence presented, but has thoroughly considered the entire record.

[2] Record citations herein to the hearing correspond with the "position" field of the audio file as indicated in the audio player, meaning the elapsed time of the proceeding instead of the time of day.

patient of hers from September 9 through September 14, 2015. *Id.* at 25:15-28. She also stated that Defendant was treated at ARH from September 3 through September 6, 2015, but was not under her "services." *Id.* at 26:14-27. Ms. Gibson stated Defendant told her he was facing federal arson charges and that he felt depressed, hopeless, and frustrated. *Id.* at 29:50-58. She testified that Defendant was diagnosed with generalized anxiety disorder/major depressive disorder recurrent. *Id.* at 31:31-42. She testified that Defendant's mood was very depressed, he was anxious, was having a difficult time sleeping, and was irritable. *Id.* at 32:02-27. She further stated that Defendant had trouble focusing and was indecisive when answering questions. *Id.* at 32:27-41.

Ms. Gibson also testified that Defendant's criminal case has exacerbated Defendant's depressive symptoms, but "it manifested in him more extreme" than in most people. *Id.* at 43:38-44:19. She testified that Defendant understood that there were consequences to the criminal process, and what the process meant. *Id.* at 44:32-50. Finally, Ms. Gibson testified that she has not had any training regarding the competency to stand trial standard, and does not know what the requirements are by law. *Id.* at 47:11-28.

**C. Testimony of Roger Johnson**

Roger Johnson testified that he is Defendant's brother, and sees Defendant approximately three to four times a week. *Id.* at 52:24-31, 52:54-53:03. Mr. Johnson testified that whenever Defendant talks about the case, Defendant gets "nervous like" and has mentioned killing himself a few times since his criminal case came up. *Id.* at 54:41-55:45. Further, Mr. Johnson stated that sometimes at the mention of Defendant's criminal case, Defendant says "he would rather go out in a bodybag" than go back to jail. *Id.* at 56:18-40. Mr. Johnson testified that he believes that Defendant does not understand that he has criminal charges and could go to jail. *Id.* at 57:21-25.

Moreover, Mr. Johnson stated that he does not believe that Defendant could talk to his attorney about his case, testify, or decide to take a plea. *Id.* at 58:10-49, 59:12-30.

However, on cross-examination, Mr. Johnson testified that, based on Defendant's suicidal statements, Defendant does understand that he is involved in a criminal case and that he could go to jail. *Id.* at 1:01:04-58. Moreover, Mr. Johnson testified that Defendant's anxiety began when he started being investigated for arson. *Id.* at 1:02:00-21. According to Mr. Johnson, Defendant has told him that he is worried that he will have to go to jail and be away from his family. *Id.* at 1:02:29-53. Finally, Mr. Johnson testified that he believes that the real issue that Defendant is struggling with is going back to jail. *Id.* at 1:03:19-30.

**D. Testimony of Dwanna Johnson**

Dwanna Johnson testified that she and Defendant have been married since 2009. *Id.* at 1:06:40-49. She testified that Defendant has been nervous, depressed and has been experiencing panic attacks. *Id.* at 1:07:32-50. She stated that Defendant has been withdrawn, and has difficulty sleeping and eating. *Id.* at 1:07:52-58. She testified that, before this year, Defendant had not experienced panic attacks, and any mention about his criminal charges set the attacks off. *Id.* at 1:09:05-52. She stated that the first time he went to the hospital for the attacks followed the first time law enforcement came to their home about the fire. *Id.* at 1:11:06-40. She testified that she believes Defendant knows he has a case pending against him, but does not understand the severity. *Id.* at 1:15:35-46. She testified that she believes that Defendant understands who the attorneys are, who the judge is, and that he might have to go to jail. *Id.* at 1:15:46-16:01. However, she testified that she does not believe Defendant can concentrate on the case, make a decision about testifying, or take a plea deal. *Id.* at 1:16:02-10, 16:35-49. On cross-examination,

she confirmed that Defendant's symptoms have been caused by involvement in this case. *Id.* at 1:24:06-24.

**E. Forensic Report and Testimony of Dr. Campbell**

Dr. Campbell's report, admitted into evidence at the hearing as Plaintiff's Exhibit 1, is based upon her personal interactions with Defendant, the results of administering the Wechsler Adult Intelligence Scale, Fourth Edition (WAIS-IV) and the Minnesota Multiphasic Personality Inventory, Second Edition, ("MMPI-2"), a personal history questionnaire, staff observation, phone interviews with Hon. Noah R. Friend and AUSA Erin Roth, and a series of competency related questions, as well as individual clinical interviews. D.E. 47 at 2-3. Further, Dr. Campbell analyzed Defendant's history, course of evaluation, and testing performance in light of the applicable competency standards.

Dr. Campbell's report is a thorough and comprehensive assessment of Defendant's history, mental and psychiatric condition, and circumstances. Dr. Campbell noted Defendant to be a relatively good historian for basic personal information. *Id*. at 3. The report states that, upon arrival at FMC-Lexington, Defendant "did not appear to be suffering from acute distress" and "his mood and affect were euthymic." *Id.* at 4. Moreover, she noted that Defendant did not have any problems understanding or following directions provided by correctional staff, interacted appropriately with other inmates, and appeared to "function normally in carrying out his daily activities[.]" *Id.* Defendant "received no psychiatric diagnosis and was not prescribed any psychiatric medication during the evaluation." *Id.*

Defendant's performance on the WAIS-IV indicated that Defendant possessed Borderline intellectual abilities. *Id.* at 5. Defendant achieved a "Verbal Comprehension Index score (VCI) of 76 which falls in the Borderline range, and a Perceptual Reasoning Index score (PRI) of 84

which falls in the Low Average Range." *Id.* at 4-5. He had a "Working Memory Index score (WMI) of 80, which falls in the Low Average range, and a Processing Speed Index (PSI) of 74 which falls in the Borderline range." *Id.* at 5. Finally, Defendant had a "Full Scale IQ (FSIQ) score of 74, and a General Ability score of 78, both of which fall into the Borderline range." *Id.* Moreover, Defendant's scores and performance on the MMPI-2 indicated that "[h]is clinical and content scales were within normal limits and gave no indication of the presence of clinical symptoms or severe psychopathology." *Id.*

Defendant also provided written responses to "a series of open-ended, competency related and personal history questions." *Id.* Dr. Campbell reports that his written responses reflected a "simplistic, concrete understanding of the court's participants and processes." *Id.* However, when verbally reviewing these questions, Defendant provided responses "suggesting that he understands the various participants and proceedings, is able to understand and discuss the charges against him, and is able to assist his attorney in preparing his defense if he so chooses." *Id.*

During his evaluation period, Defendant "showed no indication of experiencing a thought disorder." *Id.* Defendant was "generally pleasant and cooperative in interactions" and "[w]hile his education is limited and his speech is somewhat simplistic and concrete, he was able to discuss the facts of his case as well as express an understanding of the various court processes and participants." *Id.* at 6. Moreover, he showed no evidence of thought disorders, psychosis, severe depression, or severe anxiety disorders. *Id.* at 5-6.

Based on information gathered over the course of the evaluation, Dr. Campbell provided the following diagnostic impression: "No Diagnosis." *Id*. 6. Dr. Campbell stated that Defendant "did not exhibit or report any signs or symptoms of mental health problems over the course of

the evaluation, and he was not prescribed any psychiatric medication during his stay." *Id.* at 6-7. Dr. Campbell did note that Defendant reported treatment prior to his admission at FMC-Lexington for "a nervous breakdown," but that "no records were received to corroborate his report." *Id.* at 6.

The report details Defendant's understanding of the trial process generally and the specifics of his case. *Id*. at 7. Dr. Campbell states that Defendant "demonstrated an understanding of basic legal concepts and the nature of legal proceedings in general, and an ability to apply this knowledge to the facts of his own case." *Id.* Moreover, Defendant described his legal situation in a "rational, non-delusional, and reality based manner" and that he participated meaningfully in discussions of his case. *Id.* Dr. Campbell reports that Defendant understood the role of his defense attorney and the importance of a defendant working with and helping his attorney. *Id.*

More importantly, the testimony of Dr. Campbell at the competency hearing was consistent with her report. *See Hearing on Competency, October 6, 2015, Testimony of Dr. Judith Campbell* (hereinafter, *Campbell Testimony*), 1:26:20-2:06:23. Dr. Campbell stated that, over the course of Defendant's evaluation, she spent eight to ten hours with Defendant formally, and would also see him informally in the housing unit. *Id.* at 1:31:36-32:30. She testified that Defendant, while guarded, was one of the "more cooperative" persons that she has evaluated. *Id.* at 1:41:58-42:15. She testified that he expressed to her that he understood what he was in trouble for, that he potentially faced being convicted and sentenced, and carried a lot of worries and concerns about that. *Id.* at 1:42:28-43. Moreover, she testified that Defendant expressed an understanding of the participants at trial, and the nature of the process. *Id.* 1:42:54-43:18. Dr.

Campbell described the standard for competency, and stated that, in her opinion, at the time of the evaluation, Defendant was competent to stand trial. *Id.* at 1:43:20-44:13.

Notably, although the Court applied the rule on separation of witnesses pursuant to Federal Rule of Evidence 615, Dr. Campbell was allowed (with agreement of the parties) to remain in the courtroom and observe all the testimony of the defense witnesses. Dr. Campbell did testify that, at the time of her report, she had not reviewed any of Defendant's prior mental health records, but had been provided with them prior to the hearing. *Id.* at 1:45:02-10. She testified that, based on the testimony she had heard during the hearing and her review of his medical records, Defendant has been diagnosed with major depression recurrent and generalized anxiety disorder, but that this would not change her opinion as to whether Defendant was competent. *Id.* at 1:47:09-47:43. Finally, based on her training and experience, Dr. Campbell testified a Defendant can be anxious and depressed, and remain competent to stand trial. *Id.* 1:47:45-54.

In sum, Dr. Campbell appropriately applied the *Dusky* standard as codified in section 4241(a) to determine that Defendant is competent. In her report, Dr. Campbell accurately described the *Dusky* standard and proceeded to assess Defendant's ability to understand the proceedings against him and his ability to work collaboratively with defense counsel. *Id*. Dr. Campbell opined that Defendant "displayed a basic, concrete understanding of the proceedings against him and demonstrated sufficient present ability to consult with his attorney regarding the charge against him should he so choose." *Id.*

**III. Analysis and Findings**

Dr. Campbell's report and testimony support a finding that both prongs of the *Dusky* competency test are met in this case, and the witnesses and records presented by Defendant do

not contradict this decision. The testimony of Ms. Damron and Ms. Gibson, and the extensive medical records offered by Defendant, support a conclusion that Defendant is likely suffering from depression and an anxiety disorder. Section 4241(d) requires that any mental disease or defect render the defendant "unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." The evidence is insufficient to support such a finding. Both Ms. Damron and Ms. Gibson testified that Defendant was able to understand and answer questions, and remained nonpsychotic. Moreover, they both testified that Defendant understood that he was involved in a criminal case, and that it was a significant source of his symptoms. Dr. Campbell, who reviewed Defendant's mental health records and listened to the testimony at the hearing, testified that Defendant's depression and anxiety would not have affected her competency determination of Defendant.

Additionally, the testimony of Defendant's brother and wife does not contradict a finding of competency. Their testimony regarding Defendant's understanding of his predicament and suicidal ideations, while troubling, support a finding that Defendant understands the consequences and nature of the proceedings against him. From the testimony provided, Defendant's depression is largely, if not exclusively, related to his fear of returning to jail.

Moreover, Roger and Dwanna Johnson's statements that Defendant will not be able to work with his attorney, or make decisions regarding trial strategy, are far outweighed by Dr. Campbell's findings. She detailed in her report Defendant's understanding of legal proceedings, the role of counsel for both sides, the role of judge and jury, significant strategic matters like pleading guilty, and his own role in all such matters. D.E. 47 at 7. Further, the testimony of Ms. Damron, Ms. Gibson, and Dr. Campbell indicates that Defendant has the ability to communicate and understand questions, and is in a nonpsychotic state.

Based on all of the available information, Dr. Campbell concluded that "in the opinion of the undersigned evaluator, Mr. Johnson is not currently suffering from a mental disease or defect rendering him mentally incompetent to the extent he is unable to understand the nature and consequences of the proceedings against him or properly assist in his defense," and the Court agrees. D.E. 47 at 8. Dr. Campbell is the only qualified expert that testified that can address competency under the applicable legal standard, and her report and testimony reflect a long-term evaluation of Defendant with accepted testing and observation methods. The testimony presented by Defendant supports a finding that he does understand the nature and consequences of the proceedings against him, and that he is able to communicate and understand questioning, although simplistically, about his case.

## IV. Recommendation

For the foregoing reasons, the Court finds that, based on all the evidence presented, the Defendant is competent to stand trial. The Court thus finds that, per 18 U.S.C. § 4241(d), Defendant is able to understand the nature and consequences of the proceedings against him and to assist properly in his own defense. Therefore, the Court **RECOMMENDS** that the District Judge find that Defendant is competent to face further proceedings, to include trial, in this matter.

The Court issues this Recommended Disposition pursuant to 28 U.S.C. § 636(b)(1(B). The parties should consult that statute and Federal Rule of Criminal Procedure 59(b) concerning the right to appeal to the District Judge. Rule 59(b) requires that specific written objections be filed within fourteen (14) days of service of this Recommended Disposition. Failure to object per Rule 59(b) waives a party's right to review.

This the 9th day of October, 2015.

**Signed By:**
***Hanly A. Ingram*** HAI
**United States Magistrate Judge**