UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 7: 15-05(01)-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| RICKY JOHNSON, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Ricky Johnson's motion to suppress his April 7, 2015, statements to law enforcement.  [Record No. 30]  Johnson asserts that his statements should be suppressed because they were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966).  Further, he argues that the confession was involuntary under the Due Process Clause of the Fifth Amendment to the United States Constitution.

The motion was referred to United States Magistrate Judge Hanly A. Ingram for review and issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  An evidentiary hearing commenced on October 6, 2015, and concluded on October 15, 2015.  [*See* Record Nos. 57, 63.]  On November 2, 2015, the magistrate judge recommended that Johnson's motion to suppress be denied.  [Record No. 71]  Johnson has filed his objections to the magistrate judge's Recommended Disposition.[1]  [Record No. 84]  However, after

---

[1]     Because Johnson filed objections to Magistrate Judge Ingram's Recommended Disposition, the Court conducts a *de novo* review of the matters which are the subject to the defendant's objections.  28 U.S.C. § 636(b)(1).

- 1 -

reviewing all relevant materials including the defendant's objections, the Court agrees with Magistrate Judge Ingram and concludes that the motion to suppress should be denied.

## I.

Special Agents Randolph Copley and Christopher Bowens interviewed Johnson at his residence on March 10, 2015, regarding their investigation concerning a railroad tunnel fire that occurred in April 2014. [Record Nos. 30-1, p. 1; 71, p. 2] Johnson and the agents were in the defendant's kitchen, while Johnson's wife sat in the living room, providing input on one matter where Johnson's memory failed him. [Record No. 71, pp. 3, 8] During the suppression hearing, the agents testified that the defendant was eager to help with the investigation, and that he agreed "without hesitation" to take a polygraph examination. [*Id.*, p. 3] Notwithstanding this testimony, Mrs. Johnson testified that her husband had to go to the emergency room following the interview. [*Id.*, p. 8]

On April 7, 2015, Mrs. Johnson called the agents to confirm that the defendant would participate in a polygraph examination after work. [*Id.*, p. 3] She advised that Johnson was "tore up" following the initial interview, and that he had been in treatment for "a few days." [*Id.*, p. 4] Johnson and his wife arrived at the Federal Bureau of Investigation ("FBI") office in Pikeville, Kentucky at 5:00 p.m. [*Id.*] The office is located on the third floor of a private office building. [*Id.*] It has a small reception area, separated from the hall by an unlocked door. The office also has a "secure space" and an "interview room," which remain locked. [*Id.*] The agents led the couple to a conference room in the secure space. [*Id.*] Agent Bowens' service weapon was visible. [*Id.*] The defendants sat closest to the conference room door, which remained open. [*Id.*]

After agents informed Johnson that he was not under arrest nor obligated to talk, Johnson stated that he wanted to help in any way he could. [*Id.*, p. 5] The interview began with a general discussion of the tunnel fire, with the agents showing the defendant photographs of the scene. [*Id.*] Johnson did not have difficulty answering the questions, and his wife did not assist him. [*Id.*] According to her testimony, Mrs. Johnson was not fully attentive. [*Id.*, p. 8] Further, she stated that the agents did not threaten or intimidate them. [*Id.*] Mrs. Johnson testified that, during the interview, she again informed the agents that Johnson had just left a mental health facility; however, the agents disagreed with this portion of her testimony. [*Id.*, pp. 5, 8] Approximately twenty minutes into the interview, the agents asked and Johnson agreed to take a polygraph examination. [*Id.*, pp. 5, 8]

Johnson was taken to another room for the exam. Agents advised Mrs. Johnson that she could wait in the reception area while the polygraph examination was administered. [*Id.*, p. 6] Mrs. Johnson claims that the agents then asked her if she wanted to take a smoke; however, the agents testified that Mrs. Johnson made the initial request. [*Id.*, pp. 6, 9] After Because Mrs. Johnson went outside to smoke, she could not re-enter the building because the doors lock at the end of the business day. [*Id.*, p. 6] Consequently, she decided to sit in her car but attempted, without success, to reach her husband *via* phone calls. [*Id.*, p. 9]

The agents listened in another room while the polygraph examiner explained the basics of the examination to Johnson. [*Id.*, p. 6] The examiner stated that the examination was voluntary and that Johnson was not in custody. [*Id.*] He read Johnson the "Advice of Rights" and "Consent to Interview with Polygraph" forms, which Johnson signed. [*Id.*] These forms advised Johnson of his rights to remain silent, obtain an attorney, refuse to take

- 3 -

the exam, and stop answering questions at any time.  [*Id.*]  The doors to the room remained closed during the examination.  [*Id.*]

The polygraph examination lasted less than an hour, during which the device was attached to two of Johnson's fingers, with a blood pressure cuff around his arm and a strap across his chest.  [*Id.*, pp. 6–7]  Because the device indicated deception, the examiner asked Johnson if he was willing to discuss the results, which he agreed to do.  [*Id.*, p. 7]  In his confession, Johnson described the preparation leading up to the fire.  [*Id.*]  Next, the examiner asked Johnson if he wanted to write a statement, but Johnson informed the examiner that he could not read and write well.  [*Id.*]  As a result, the examiner wrote the statement and read it to the defendant, who then signed it, adding an apologetic sentence at the end.  [*Id.*]  In addition, Johnson read aloud the first sentence of the confession to demonstrate that he could read.  [*Id.*]

At this point, the agents re-entered the examination room to serve as witnesses to the confession.  [*Id.*]  The defendant did not demonstrate any mental health problems or any need for assistance during the polygraph examination or post-examination interview.  [*Id.*]  The April 7, 2015, interview and polygraph examination lasted approximately two to two and one-half hours.  [*Id.*, pp. 8–9]  Mrs. Johnson testified that, when the defendant exited the building, he looked "relieved," and not nervous or intimidated.  [*Id.*, p. 9]

Following the April 7, 2015, interview and confession, Johnson moved to suppress the written and recorded statements.  [Record No. 30]  He contends that the agents subjected him to a custodial interrogation, and that the waiver of his *Miranda* rights was not voluntary, knowing, or intelligent.  [Record No. 30-1, p. 5]  Further, he argues that the interrogation

- 4 -

methods utilized rendered his confession involuntary under the Due Process Clause because the agents were aware of his mental health issues and prevented his wife from reentering the building.  [*Id.*, p. 3]  In response, the United States asserts that the defendant was not in custody during the interview and confession, indicating that Johnson's *Miranda*'s rights were not implicated. [Record No. 32, pp. 4–5]  The government also argues that Johnson's waiver of the right against self-incrimination was valid.  [*Id.*, pp. 6–7]   Finally, the United States contends that law enforcement's actions were not coercive and did not violate Johnson's due process rights.  [*Id.*, pp. 3–4]

## II.

### A.    *Miranda* Claims

Before a law enforcement officer may question a person in custody, the suspect "must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."   *Miranda*, 384 U.S. at 444.   Incriminating statements "elicited in noncompliance with this rule may not be admitted . . . in a criminal trial."  *Stansbury v. California*, 511 U.S. 318, 322 (1994).  After a suspect has been advised of his rights, he may waive them, "provided the waiver is made voluntarily, knowingly and intelligently" under the totality of circumstances.  *Miranda*, 384 U.S. at 444.

Johnson alleges that the polygraph examination and post-examination interview on April 7, 2015, constituted a custodial interrogation, requiring the agents to comply with the requirements of *Miranda v. Arizona*, 384 U.S. 436 (1966).  [Record No. 30-1, p. 5]  He further asserts that his waiver of those rights was not voluntary, knowing, or intelligent.  [*Id.*,

p. 3]  However, because Johnson was not in custody, and because he executed a valid waiver of his rights, his statements will not be excluded under *Miranda*.

### 1.      Custody

"Where a party seeks suppression of his statements based upon a failure to receive his *Miranda* warnings, he must demonstrate by a preponderance of the evidence . . . that he was subjected to a 'custodial interrogation.'"  *United States v. Lawrence*, Nos. 88-2056, 88-2086, 88-2087, 88-2109, 88-2135, 1989 WL 153161, *5 (6th Cir. Dec. 18, 1989).  A custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444.  Here, the parties agree that the defendant was subjected to interrogation.  [Record No. 84, p. 2]  Thus, the relevant inquiry is whether Johnson was "in custody" during the polygraph examination and post-examination interview.

Custody requires either a formal arrest or a "restraint on freedom of movement of the degree associated with a formal arrest."  *Stansbury*, 511 U.S. at 322 (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (internal quotation marks omitted).  In other words, the question is whether a "reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995).  The Sixth Circuit focuses on the following factors in determining whether a reasonable person in the defendant's position would conclude that he was in custody: (i) the location of the interview; (ii) the length and manner of questioning; (iii) whether the individual possessed unrestrained freedom of movement; and (iv) whether the individual was informed that he need not answer questions.   *United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009)

- 6 -

(citing *United States v. Swanson*, 341 F.3d 524, 529 (6th Cir. 2003)).  In the present case, Magistrate Judge Ingram correctly evaluated these factors in concluding that Johnson was not in custody at the time of the April 7, 2015, interview and polygraph examination for *Miranda* purposes.

### a.      Location

Law enforcement officers are not required to give *Miranda* warnings simply because an interrogation takes place at a station house or their office location.  *See Oregon v. Mathiason*, 429 U.S. 492, 495 (1977).  "[A] non-custodial interview is not transformed into a custodial one simply because 'the questioning takes place in the station house, or because the questioned person is one whom the police suspect.'"  *United States v. Malcolm*, 435 F. App'x 417, 421 (6th Cir. 2011) (quoting *Mathiason*, 429 U.S. at 495).  In *Malcolm*, the Sixth Circuit determined that the defendant was not in custody, even though he was interrogated at a federal law enforcement office, because he voluntarily appeared for the interview, he was not physically restrained, and agents repeatedly told him that he was not under arrest.  435 F. App'x at 421; *see also Singleton v. Carter*, 74 F. App'x 536, 541 (6th Cir. 2003).

Although Johnson was questioned at the FBI office rather than at a public or neutral location, this factor does not mandate a finding that he was "in custody".  Like the defendants in *Malcolm* and *Singleton*, Johnson voluntarily appeared at the office, and was told that he could leave at any time.  435 F. App'x at 421; 74 F. App'x at 541.  [Record No. 71, pp. 4, 6]  However, in his objections to the Recommended Disposition, Johnson notes that the room in which the polygraph examination was administered did not have windows and the door remained closed during the exam and follow-up.  He asserts that this might

- 7 -

cause a reasonable person to believe that he lacked the ability to terminate questioning. [Record No. 84, p. 2]   Additionally, Johnson notes that "no one was present in the area," indicating that a reasonable person might feel more isolated.   [*Id.*]   These factors weigh slightly in favor of a finding of custody.

### b.   Length and Manner of Questioning

Johnson's polygraph examination and post-examination interview lasted, at most, one hour and forty-five minutes.   [Record No. 71, p. 12]   Additionally, the entire interview lasted less than three hours.   [*Id.*, p. 8]   As the magistrate judge aptly noted, in other cases, such length has been held to be non-custodial.   *United States v. Mahan*, 190 F.3d 416, 421−22 (6th Cir. 1999) (holding that ninety-minute interview was non-custodial); *Mason v. Mitchell*, 320 F.3d 604, 612, 632 (6th Cir. 2003) (four-hour interview was non-custodial).   This factor weighs in favor of a finding that Johnson was not in custody.

Further, there is no evidence that the manner of questioning was intimidating or inappropriate.   Even Mrs. Johnson testified that the agents were "nice" to the defendant prior to the polygraph examination.   [Record No. 71, p. 8]   And Johnson has provided no evidence that their behavior changed or that the polygraph examiner acted inappropriately.   While his objections point out that one of the agents was carrying a visible weapon, the Sixth Circuit focuses on "whether weapons were drawn rather than merely visible."   *United States v. Conder*, 529 F. App'x 618, 623 (6th Cir. 2013).   As a result, Johnson has not carried his burden to demonstrate that the length and manner of questioning weigh in his favor.   *Lawrence*, 1989 WL 153161, at *5.   Under the facts of this case, the mere presence of a weapon does indicate that the interview was custodial.

### c.       Freedom of Movement and Ability to Stop Questioning

Even though Johnson was connected to the polygraph machine *via* wires, a chest strap, and a blood pressure cuff, he was not physically restrained under *Miranda* because he was advised that he could terminate the examination or interview at any time.  *See, e.g.*, *United States v. Finfrock*, No. 2:08-CR-54, 2010 WL 727223, *9 (W.D. Mich. Feb. 25, 2010) (where defendant voluntarily agreed to take a polygraph examination and was told she could cease questioning at any time, the court found that agents did not "restrain her against her will," so she was not in custody).  In *United States v. Gray*, a suspect who voluntarily submitted to a polygraph examination actually stopped the examination and left the police station.  No. 14-04-GFVT, 2014 WL 2873931, *15 (E.D. Ky. June 24, 2014).  Because Johnson was advised several times (both orally and in writing) of his ability to stop the interview and polygraph examination, the third and fourth factors weigh in favor of a finding that he was not in custody.  [Record No. 71, pp. 5–6]

In his objections, Johnson argues that the fact that agents' failure to give additional warnings after the polygraph examination weighs in favor of a finding of custody.  [Record No. 84, p. 3]  However, the magistrate judge properly noted that the "Advice of Rights" form was not limited to the examination.  [Record No. 71, p. 13]  Further, the fact that Johnson was advised several times that he was not in custody and that he was free to cease questioning negates any effect an additional warning would have had.

In summary, the only *Panak* factor that potentially weighs in Johnson's favor is the first one.  552 F.3d at 465.  However, the location of the interview, standing alone, is insufficient to establish custody.  *Mathiason*, 429 U.S. at 495.  Because Johnson appeared

voluntarily at the FBI office, was not physically restrained, and was informed of his right to leave on multiple occasions, the Court concludes that he was not in custody. Therefore, the agents were not required to obtain a *Miranda* waiver for the confession. 384 U.S. at 444.

### 2.      Valid Waiver

Even if Johnson were subjected to a custodial interrogation, the Court would not find that his statements should be suppressed under *Miranda* because he executed a valid waiver of his right against self-incrimination. According to the Supreme Court, "[t]he voluntariness of a waiver of [the privilege against self-incrimination] has always depended on the absence of police overreaching." *Colorado v. Connelly*, 479 U.S. 157, 170 (1986). The government has the burden of proving a valid waiver by a preponderance of the evidence. *Id.* at 168. "Only if the 'totality of the circumstances surrounding the interrogation' reveal[s] both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)).

### a.      Voluntariness

"[C]oercive police activity is a necessary predicate to the finding that a confession is not voluntary . . . " *Connelly*, 479 U.S. at 167 (internal quotation marks omitted). Here, Johnson asserts that the interview was coercive due to the length of questioning,[2] the agents'

---

[2] Johnson also argues that the fact that he was interviewed after normal business hours suggests a finding of police coercion. [Record No. 84, p. 7] However, the interview was conducted at that time due the defendant's work schedule. [Record No. 71, p. 3] In any event, this factor is outweighed by the numerous factors weighing in a favor of a finding of no coercion.

knowledge of his borderline intellectual functioning, and the fact that Johnson's wife could not reenter the building following a smoke break.  [Record No. 68, p. 3]

The length of the interview, as a whole, is not relevant to the determination of whether Johnson validly waived his rights.  Instead, the relevant inquiry is the amount of time that passed between the beginning of the interview and the execution of the waiver. And only thirty minutes passed between the initiation of the interview and the signing of the waiver forms.  [Record No. 71, p. 15]  This does not rise to the level of coercion required under *Miranda*.  *Mahan*, 190 F.3d at 421.

As previously noted, Johnson alleges that coercion resulted from the fact that the officers were aware of his borderline intellectual abilities and mental health issues.  [Record No. 84, pp. 4–5]  For example, he has an Intelligence Quotient ("IQ") of 74, and a forensic psychologist found that he has difficulty understanding some "sophisticated" concepts of the criminal justice system.  [Record No. 71, p. 18]  Further, Johnson asserts that he suffers from anxiety and depression.  [Record No. 68, p. 2]

A lesser "quantum of coercion" is required where the suspect suffers from a mental incapacity.  *Hill v. Anderson*, 300 F.3d 679, 682 (6th Cir. 2002) (quoting *United States v. Sablotny*, 21 F.3d 747, 751 (7th Cir. 1994)).   However, "diminished mental capacity alone does not prevent a defendant from validly waiving his or her *Miranda* rights."  *Garner v. Mitchell*, 557 F.3d 257, 261 (6th Cir. 2009).

While the agents were apprised of the fact that the defendant had trouble reading/writing and that he had recently left a mental health facility, there is no evidence that

- 11 -

they exploited his diminished mental capacity in any way.[3]   The only coercive activity alleged by the defendant is that the agents suggested that Mrs. Johnson leave the building for a smoke break and did not allow her to return.[4]   [Record No. 68, p. 3]  It does not appear that Mrs. Johnson's absence had any "coercive effect" on the defendant, as she had not been helping him prior to the polygraph examination.[5]   *See Maryland v. Shatzer*, 559 U.S. 98, 111 (2010).  [Record No. 71, p. 5]

The Court concludes that Johnson waived his rights shortly after beginning the interview.  Further, there is no evidence of coercive law enforcement activity.  Therefore, the voluntariness prong under *Miranda* is satisfied.

### b.      Knowing/Intelligent

Waivers of constitutional rights must be knowingly and intelligently made.   *See Colorado v. Spring*, 479 U.S. 564, 574 (1987).  Essentially, a defendant must understand that he can "choose not to talk to law enforcement officers" or "discontinue talking at any time." *Garner*, 557 F.3d at 261 (6th Cir. 2009) (quoting *Spring*, 479 U.S. at 574).  The defendant argues that his waiver was not knowing or intelligent because: (i) his wife was not present; (ii) he has a low IQ; and (iii) the examiner's short review of his constitutional rights was insufficient to provide him with a true understanding of those rights.  [Record No. 84, p. 4]

---

[3]      In addition, the agents did not know Johnson's IQ, and they were not aware of the specific mental health treatment he received.  [Record No. 71, p. 19]

[4]      The agents testified, however, that Mrs. Johnson asked to take a smoke break. [Record No. 71, p. 6]

[5]      The magistrate judge noted that there was no coercive "intent" on the part of the agents.  [Record No. 71, p. 16]  However, badgering or overreaching, "explicit or subtle, deliberate or unintentional," may render a *Miranda* waiver involuntary.  *Smith v. Illinois*, 469 U.S. 91, 98 (1984) (per curiam).

- 12 -

Johnson's IQ, alone, does not indicate that the waiver was unknowing or unintelligent. *Garner*, 557 F.3d at 265 (defendant with IQ of 76 executed a knowing and intelligent waiver). Instead, the Court must consider diminished mental capacity with other factors, including "the defendant's conduct during, and leading up to, the interrogation." *Id.* Johnson demonstrated that he understood his rights. For instance, he had no trouble answering questions, and his wife did not assist him or even pay attention to all the questions. [Record No. 71, p. 5]  Moreover, the polygraph examiner read the "Advice of Rights" form aloud to the defendant, and afterward, the defendant stated that he was "willing to answer questions without a lawyer present." [*Id.*, p. 17]

The record indicates that Johnson understood the rights he was waiving, and that his waiver was knowingly and intelligently made. The government has met both prongs of the waiver inquiry. *Moran v. Burbine*, 475 U.S. 412, 421 (1986)  As a result, the Court agrees with the magistrate judge's conclusion that the statements made by Johnson following his execution of the waiver should not be suppressed under *Miranda*.

### B.     Due Process Claim

The Fifth Amendment provides that no person shall be "deprived of life, liberty, or property, without due process of law."  U.S. CONST. amend. V.  As a result, statements admissible under *Miranda* may be excluded as violating a defendant's due process rights. *See United States v. Dickerson*, 530 U.S. 428, 444 (2000) (analyzing due process under the Fourteenth Amendment).  Where a defendant claims that his confession was involuntary under the Due Process Clause, the government bears the burden of proving that the confession was voluntary. *United States v. Wrice*, 954 F.2d 406,410 (6th Cir. 1992).

- 13 -

The Sixth Circuit utilizes a three-factor test to determine if a confession is voluntary, analyzing whether: (i) "the police activity was objectively coercive;" (ii) the coercion was sufficient to "overbear the defendant's will;" and (iii) "the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement." *Mahan*, 190 F.3d at 422 (citing *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988)). Factors that influence the analysis include the defendant's age, education, and intelligence, whether he was informed of his rights, the length and extent of questioning, and any use of physical punishment. *Id.* at 422–23.

In this case, there is no evidence that the federal agents' activity was objectively coercive. While the defendant has a low IQ and trouble reading and writing, he demonstrated an understanding of his constitutional rights by stating that he was willing to speak without an attorney.[6] [Record No. 71, p. 7] Further, the examiner took precautions by reading the Advice of Rights form and the defendant's written statement to the defendant prior to having him sign the two documents. [*Id.*, p. 6] Moreover, Johnson added an apologetic sentence to the end of his written confession. [*Id.*, p. 7] Throughout the interview, Johnson was informed of his right to halt the questioning and leave.

Even if the agents kept Mrs. Johnson away from her husband, there is no evidence that this conduct was used to overcome Johnson's free will. *Mahan*, 190 F.3d at 422. When Mrs. Johnson was present with the defendant, she did not assist him in answering questions. Consequently, this law enforcement activity did not constitute a "crucial motivating factor" in Johnson's decision to confess. *Id.* The Court agrees with the magistrate judge's

---

[6]     In addition, Johnson's competency has been established. [Record No. 69]

conclusion that the recorded and written statements during and after the polygraph examination on April 7, 2015 were voluntary.  [Record No. 71, p. 22]

**III.**

In summary, Johnson was not in custody at the time of his interrogation.  As a result, *Miranda*'s requirements do not apply to his situation.  But even if Johnson were in custody, he executed a valid waiver of his right against self-incrimination under *Miranda*.  Further, Johnson's confession was voluntary under the Due Process Clause.  Therefore, the defendant's statements to federal agents on April 7, 2015 will not be suppressed. Accordingly, it is hereby

**ORDERED** as follows:

1.    The Recommended Disposition of Magistrate Judge Hanly A. Ingram [Record No. 71] is **ADOPTED** and **INCORPORATED** by reference.

2.    Defendant Ricky Johnson's objections to Magistrate Judge Ingram's Recommended Disposition [Record No. 84] are **OVERRULED**.

3.    Defendant Ricky Johnson's motion to suppress [Record No. 30] is **DENIED**.

This 24th day of November, 2015.



Signed By:

*Danny C. Reeves*  DCR

United States District Judge